KELLY, J.
(dissenting). The issue presented is whether the “frank communications” exemption[1] of the Michigan Freedom of Information Act[2] (FOIA) applies to communications and notes that were preliminary to final agency action when made but were no longer preliminary when requested. A majority of this Court has decided that the exemption applies as long as the communications were preliminary to final agency action at the time of their creation. Because I find this result to be inconsistent with the statutory language, the legislative history, and the purpose of the exemption, I must respectfully dissent.
FACTS
Plaintiffs Diane Bukowski, a news reporter, and the Michigan Citizen, a newspaper, sought release of the Shoulders Report from defendant City of Detroit. An Executive Board of Review (EBR) of the Detroit Police Department wrote the report.[3] Its preparation was occasioned by the involvement of Detroit police officer *280 Eugene Brown in numerous shooting incidents that left three people dead and six injured. The Detroit Police Department undertook internal investigations into Officer Brown’s conduct. After public concern was expressed at the response of the department to Officer Brown’s actions, the chief of police directed the EBR to review the internal investigations. The EBR’s mission was to review Brown’s actions and the department’s response to those actions.
On June 6, 2002, plaintiffs filed a FOIA request for a complete copy of the Shoulders Report. Defendant denied the request, stating:
Your request is denied pursuant to MCL 15.243(1)(b)(i) and (ii) for the reason that the report you requested is an investigating record compiled for law enforcement purpose[s] and disclosing the report would interfere with law enforcement proceedings and deprive Officer Brown and others [of] the right to a fair trial or impartial administrative adjudication. Moreover, contained in the Shoulder[s] report are communications and notes with[in] a public body of an advisory nature to the extent they cover other than purely factual material and are preliminary to a final agency determination of policy or action. Accordingly, your request is also denied pursuant to MCL 15.243(1)(m).
On December 6, 2002, plaintiffs filed a complaint seeking release of the report. Both sides filed motions for summary disposition. Defendant continued to assert that the report was exempted by the frank communications exemption and also claimed that it was exempt under the “law enforcement personnel records” exemption, MCL 15.243(s)(ix).[4] After oral argument on the *281 motions, the trial court indicated that it would partially grant both motions. The court denied plaintiffs access to the deliberative portions of the report, determining the material to be exempt. However, it rejected defendant’s contention that the material was exempt under the personnel records exemption. Both sides appealed from the trial court’s decision.
In a unanimous unpublished opinion, the Court of Appeals reversed and remanded. Unpublished opinion per curiam, issued May 26, 2005 (Docket No. 256893). It decided that the trial court had correctly articulated the personnel records exemption but incorrectly applied the exemption to determine whether the public interest in disclosure outweighed the interest in nondisclosure. With respect to the frank communications exemption, the Court decided that the trial court had incorrectly applied the balancing test. It also held that the frank communications exemption “applies only if the communications ‘are preliminary to a final agency determination of policy or action’ (emphasis added), not ‘were preliminary to a final agency determination of policy or action.’ ” Id., slip op at 6. The Court of Appeals directed the trial court to consider this issue on remand.
Defendant filed a motion for reconsideration challenging the Court of Appeals decision on the frank communications exemption. The Court of Appeals denied the motion, and defendant applied for leave to appeal in this Court. This Court heard oral argument on the application, having directed the parties to “address whether the Court of Appeals erred in instructing the Wayne Circuit Court, on remand, that the Freedom of Information Act ‘frank communications’ exemption, MCL 15.243(1)(m), does not apply to communications that are no longer preliminary to an agency determina *282 tion of policy or action, even if the communications were preliminary at the time that they were made.” 477 Mich 960 (2006).
STANDARD OF REVIEW
This Court reviews issues of statutory interpretation de novo. Coblentz v City of Novi, 475 Mich 558, 567; 719 NW2d 73 (2006). When interpreting a statute, the task is to ascertain and give effect to “the purpose and intent of the Legislature by examining the provisions in question. The statutory words must be considered in light of the general purpose sought to be accomplished.” People v Smith, 423 Mich 427, 441; 378 NW2d 384 (1985).
ANALYSIS
The frank communications exemption to FOIA, MCL 15.243(1)(m), states:
(1) A public body may exempt from disclosure as a public record under this act any of the following:
(m) Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure.
In Herald Co, Inc v Eastern Michigan Univ Bd of Regents,[5] this Court held that documents are frank communications if (1) they are communications and *283 notes within a public body or between public bodies of an advisory nature that (2) cover other than purely factual materials and (3) are preliminary to a final agency determination of policy or action. Id. at 475. If the documents fail any one of these threshold qualifications, then the frank communications exemption does not apply. This case concerns the third element. The issue is whether the requirement that the communications be preliminary to a final agency determination is measured from when the documents are created or when disclosure is requested.
The frank communications exemption exempts from disclosure “[communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action.” This exemption is written in the present tense.[6] By using the present tense, the Legislature has indicated that, at the moment the exemption is invoked, the communications and notes must be preliminary to a final agency determination or action.[7]
Accordingly, the Court of Appeals correctly held that the frank communications exemption applies only if the communications “are preliminary” to a final agency determination of policy or action at the time the request is made. If the Legislature wanted the determinative time to be when the communications were created, it would have used the word “were.”[8] It chose not to do so, *284 and the statutory language should be understood accordingly. It is not the function of the courts to rewrite statutes. Hesse v Ashland Oil, Inc, 466 Mich 21, 30-31; 642 NW2d 330 (2002).
MCL 15.243(1) is the provision that gives public bodies the authority to exempt from disclosure material that falls within the terms of one of the specific exemptions. It, too, supports a finding that the frank communications exemption applies only if the communications are preliminary to a final agency action at the time of the request. MCL 15.243(1) provides that “[a] public body may exempt from disclosure as a public record under this act any of the following . . ..” This provision is also written to be applied in the present. This is because the public body cannot decide whether the requested material falls within one of the exemptions until a member of the public makes a request for disclosure.
For this reason, it is illogical to look back in time, as the majority interpretation requires, in deciding whether the requested material is exempt. The more natural interpretation is to look at the material at the time of the request in order to decide whether an exemption applies.[9] **9 Only if the terms of the exemption specifically use language indicating that another point *285 in time is determinative should a point in time other than the present be considered. For example, the majority claims that MCL 15.243(1)(i)[10] and (j)[11] 11 support their interpretation by using the word “until.” Actually, these provisions undermine their position, because they specifically provide that some time in the past, or the future, is determinative. Unlike them, the frank communications exemption speaks in the present tense.
Holding that the frank communications exemption applies only if the communications are preliminary to a final agency determination of policy or action at the time of the request is (1) consistent with general purpose of FOIA and (2) consistent with the rule that FOIA exemptions are to be narrowly construed. See *286 Herald Co v Bay City, 463 Mich 111, 119; 614 NW2d 873 (2000). The purpose clause of FOIA, MCL 15.231(2), provides:
It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.
Reading the frank communications exemption to apply only if the communications are preliminary to final action at the time of the request is consistent with this purpose. It ensures that citizens will get full and complete information regarding the affairs of government and the official acts of those who represent them. The majority’s reading of the statute is inconsistent with this purpose and allows the exemption to swallow the rule.
It is also helpful to review the legislative history surrounding the particular exemption at issue. It supports the conclusion that the Legislature meant to extend the exemption only to those communications that are preliminary to a government decision at the time of the FOIA request.[12] The frank communications *287 exemption is a revision of the “deliberative process” privilege that existed in Michigan law before the adoption of FOIA. That privilege, contained at MCL 24.222, was part of the Administrative Procedures Act[13] and exempted from disclosure “[i]nteragency or intraagency letters, memoranda, or statements which would not be available by law to a party other than an agency in litigation with the agency and which, if disclosed, would impede the agency in the discharge of its functions.”
FOIA revised the deliberative process privilege to permit more access by the public to the government’s workings. In fact, the original proposal for FOIA, House Bill 6085, specifically included preliminary inter- and intra-agency communications in the category of writings made available to the public under the act.[14] There was considerable debate over this section, however, with several agencies objecting to the bill’s failure to grant a deliberative process exemption. House Legisla *288 tive Analysis, HB 6085, September 21, 1976. In response, an amendment was offered to the bill. It read:
13. A public body may exempt from disclosure as a public record under this act:
(m) Communications between and within public bodies, including letters, memoranda, or statements which reflect deliberative or policy-making processes and are not purely factual, or investigative matter. [1976 Journal of the House 2842-2843.]
Under this amendment, the frank communications exemption would have applied in this case because there was no requirement that the communications be preliminary to a final agency determination of policy or action. But the proposed amendment was defeated.[15] Id. at 2843. Two months later, the original sponsor of the bill, Representative Bullard, proposed an amendment adding what is currently the frank communications exemption. 1976 Journal of the House 3210-3211.
*289 The legislative history surrounding the adoption of the exemption indicates that the language used was carefully thought out. The final amendment, the first one to include the language “are preliminary to a final agency determination of policy or action,” was a compromise. It reconciled one bill that would have explicitly allowed disclosure of all inter- and intra-agency communications, with another that would have explicitly exempted all deliberative communications. By using the word “are,” the Legislature intended to strike a balance between exempting all frank communications and no frank communications. The majority ignores this balance by exempting all nonfactual communications made during the deliberative process.
The fact that the frank communications exemption of FOIA replaced MCL 24.222 of the Administrative Procedures Act is also relevant. The FOIA legislation was introduced because it was thought that the access provided by the Administrative Procedures Act was “insufficient, unclear, and extremely unspecific.” House Legislative Analysis, HB 6085, September 10, 1976. FOIA was intended to give the public greater access than it had before. Id. It follows that the Legislature intended less material to be exempt under the frank communications exemption than had been exempt under the Administrative Procedures Act.
MCL 24.222 mirrors the Federal Freedom of Information Act[16] exemption found at 5 USC 552(b)(5).[17] For *290 this reason, caselaw interpreting the federal exemption is instructive in determining what material was exempt under the Administrative Procedures Act. Int’l Business Machines Corp v Dep’t of Treasury, 71 Mich App 526, 535; 248 NW2d 605 (1976). The United States Supreme Court has found that the federal exemption applies to predecisional communications leading up to final policy or action but not to postdecisional communications. Nat’l Labor Relations Bd v Sears, Roebuck & Co, 421 US 132, 151-152; 95 S Ct 1504; 44 L Ed 2d 29 (1975). Hence, the United States Supreme Court has decided that the federal exemption applies to communications that were preliminary to final action at the time they were created.
By deciding as it does, the majority interprets our exemption consistently with the federal exemption. This is erroneous because the Legislature rejected this interpretation when it eliminated the Administrative Procedures Act. In place of the act, the Legislature enacted FOIA, which was intended to exempt less information than its predecessor. The majority opinion fails to take cognizance of this point.
Whether one considers the language of the statute or its legislative history, the conclusion is inescapable: the Legislature intended the frank communications exemption to apply only when communications are preliminary to final action at the time a FOIA request is made. In the present case, advisory communications and notes that are the subject of the Shoulders Report may have been preliminary to a final agency determination of policy or action at some point in the past. However, once the documents were no longer preliminary to agency *291 action, they should have been immediately released when properly sought under FOIA. The Court of Appeals was correct in remanding the case to the trial court for a determination on this issue.
CONCLUSION
“When government begins closing doors, it selectively controls information rightfully belonging to the people.” Detroit Free Press v Ashcroft, 303 F3d 681, 683 (CA 6, 2002) (opinion by Keith, J.). This Court closes a door by giving the frank communications exemption an overly broad reading that the Legislature never intended. The result of this decision will be that materials that our Legislature intended to allow the public to access will forever be kept from the public eye. This decision undermines the very purpose of FOIA, which is to provide for an informed public so that the people can fully participate in the democratic process. I respectfully dissent from this erroneous decision.

 MCL 15.243(1)(m).

 MCL 15.231 et seq.

 The report gets its name from Deputy Chief Walter Shoulders. Deputy Chief Shoulders was appointed as chairman of the EBR.

 Defendant withdrew its claim of exemption under MCL 15.243(1)(b) because “at the present time, we do not have any knowledge that there is any law enforcement proceedings that may be interfered with or that would jeopardize any rights to a fair trial or impartial adjudication of the matter if the Shoulders report were to be released.”

 475 Mich 463; 719 NW2d 19 (2006).

 The word “are” is defined as the present indicative plural and second person singular of “be.” Random House Webster’s College Dictionary (2001).

 “Present” is defined as “being, existing, or occurring at this time or now; current.” Random House Webster’s College Dictionary (2001).

 By finding that the frank communications exemption applies to communications that “were” preliminary to final agency action, the majority ignores MCL 8.3a. This section governs statutory construction *284 and provides that “words and phrases shall be construed and understood according to the common and approved usage of the language.” The word “are” does not commonly have the same definition as the word “were.”

 Another example of a provision in which the measuring time is determinative is MCL 15.243(g). It provides an exemption for “Conformation or records subject to the attorney-client privilege.” Information that at one time was subject to the attorney-client privilege can become unprotected. Thus, the measuring time is determinative. If the determinative time is when the communication was created, material that was once exempt will always be exempt. If the determinative time is when the request is made, material that was once exempt could be subject to disclosure.

 MCL 15.243(1)(i) provides:
(1) A public body may exempt from disclosure as a public record under this act any of the following:
(i) A bid or proposal by a person to enter into a contract or agreement, until the time for the public opening of bids or proposals, or if a public opening is not to be conducted, until the deadline for submission of bids or proposals has expired.

 MCL 15.243(1)(j) provides:
(1) A public body may exempt from disclosure as a public record under this act any of the following:
(j) Appraisals of real property to be acquired by the public body until either of the following occurs:
(i) An agreement is entered into.
(ii) Three years have elapsed since the making of the appraisal, unless litigation relative to the acquisition has not yet terminated.

 This case presents a perfect example of what is wrong with a method of statutory interpretation that fails to consider all relevant sources in ascertaining legislative intent. As I have demonstrated, the majority’s interpretation is not the most natural reading of the statutory language. Rather than test its interpretation to ensure that it reaches the correct result, the majority ignores numerous other relevant sources that illustrate that its reading was not intended by the Legislature. “[T]he ‘minimalist’ judge ‘who holds that the purpose of the statute may be learned only from its language’ retains greater discretion than the judge who ‘will seek guidance from every rehable source.’ A method of *287 statutory interpretation that is deliberately uninformed, and hence unconstrained, increases the risk that the judge’s own policy preferences will affect the decisional process.” BedRoc Ltd, LLC v United States, 541 US 176, 192; 124 S Ct 1587; 158 L Ed 2d 338 (2004) (Stevens, J., dissenting), quoting Barak, Judicial Discretion trans. Yadin Kaufmann (New Haven: Yale University Press, 1989) p 62.
The majority alleges that it is “astonishing” for me to claim that, by ignoring all sources aside from the statutory language, it could reach an uninformed decision. Ante at 277 n 13. The majority is too easily astonished. A decision that considers more pertinent information is generally more informed than one that considers less. Of course, I agree with the majority that the statutory language is a vital indicator of legislative intent. But what is “astonishing” is that anyone, no matter what the task, would ignore other helpful sources when trying to reach the correct answer to a difficult question. Ignoring helpful and relevant sources is not a good way to deal with most difficult decisions in life, and that includes statutory interpretation.

 MCL 24.201 et seq.

 The initial version of House Bill 6085 stated:
*288 Section 12. The following categories of writings are specifically made available to the public under this act if those writings exist and are not exempt under section 13:
(g) Communications between public bodies and within public bodies including preliminary intra[-]agency, interagency, and intergovernmental drafts, notes, recommendations, and memoranda in which opinions are expressed or policies discussed or recommended. [1976 Journal of the House 4152-4153.]

 The defeat of this amendment indicates that the Legislature rejected exempting all nonfactual communications that occur during the deliberative process. However, this is exactly the result reached by the majority.

 5 USC 552.

 MCL 24.222 exempted:
Interagency or intra-agency letters, memoranda or statements which would not be available by law to a party other than an agency in litigation with the agency and which, if disclosed, would impede the agency in the discharge of its functions.
5 USC 552(b)(5) exempts
*290 inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency!.]